William E. Hicks v. Commissioner. Mary Sadler Hicks v. Commissioner.
Hicks v. Commissioner
Docket Nos. 23224, 23225.
United States Tax Court
1950 Tax Ct. Memo LEXIS 28; 9 T.C.M. (CCH) 1088; T.C.M. (RIA) 50292; November 29, 1950
Harry A. Johnson, Jr., Esq., and R. J. Hughes, C.P.A., for the petitioners. Jackson L. Bailey, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined deficiencies in petitioners' income tax for the calendar year 1945 in the following amounts: Docket No.
Petitioner
Deficiency
23224
William E. Hicks
$578.46
23225
Mary Sadler Hicks
598.50
The proceedings were consolidated for hearing. The issues involved in these proceedings are: (1) Whether or not the amount of $3,121.22 expended for hotel rooms, meals, telephone calls and automobile expenses is deductible under section 23 (a) (1) (A), Internal Revenue Code. (2) Whether *29 income realized by petitioners from the sale of oil and gas leases during the calendar year 1945 was ordinary income or capital gains. Findings of Fact Petitioners are husband and wife and have resided continuously in Shreveport, Louisiana, since 1928. Their income tax returns for the taxable year here involved were filed with the collector of internal revenue for the district of Louisiana on a community property basis. William E. Hicks, upon whose income and expenditures these proceedings arise and who is hereinafter referred to as petitioner, is self employed as an "oil operator". He has been engaged in this business since 1922. Until 1939 his operations were confined to Texas. In 1939 he began operations in Mississippi and since that time his income has been derived from operations in Mississippi and to a lesser amount in Texas. Although no income was derived from sources in Louisiana, petitioner did purchase two leases in that state in 1945. In negotiating and concluding the purchases and because of other joint ventures with Charles G. Laskey, petitioner made periodic trips to Shreveport. He maintained no office there except at his home. Because petitioner's Mississippi *30 operations were the main source of his income and Jackson being the center of the Mississippi oil operations, petitioner lived at the Walthall Hotel in that city on a daily basis, checking out when he left town, either to return to Shreveport, or on business trips to other cities. In 1945, petitioner was in Jackson an estimated 253 days. In the conduct of his business petitioner visited oil fields or areas in the Jackson vicinity which he anticipated would produce oil, operating on no set schedule, usually returning to Jackson in the evening. Petitioner used his automobile in his business in traveling to the areas around Jackson and also out of town. He made occasional trips to East Texas, Houston, Memphis and New Orleans. Petitioner's wife and child remained in Shreveport. Telephone calls and notary public services were necessary in his business, the specific amounts, however, are not indicated. In the conduct of his business as an "oil operator," petitioner purchased oil leases on property he anticipated would produce oil. He has drilled wells in partnership with others. From 1943 to 1947 he was employed on several occasions as an agent for an oil company. While so employed *31 he was either paid on a commission basis or he would purchase the leases in his own name with the understanding the leases would later be turned over to the oil company. Some of the transactions with Magnolia Oil Company were on this basis. He would also purchase for his own account. In 1945 petitioner, in associations with others, assembled a block of leases called the Flora area in Madison County, Mississippi, and drilling was begun. Prior to completion of the well in November, the lease was sold to Sohio Oil Company. Petitioner purchased for his own account in 1945 about 15 to 20 leases. He sold 27. He had held these leases for varying periods of time - from one day up to 3 1/2 years. In these transactions petitioner dealt directly with the seller or purchaser. The following is a summary of petitioner's sales of leases, net income from sales of leases, and net income from oil production for the years indicated: Net
Net Sales
Production
Year
Sales
Income
Income
1939
3
$ 4,244.24
None
1940
2
4,956.20
None
1941
5
15,052.17
None
1942
3
11,333.19
None
1943
1944
17
18,037.96
$1,409.18
1945
27
26,037.54
260.01
The leases *32 involved in the transactions questioned by respondent were: (a) A lease purchased April 29, 1944, for $736.50 and sold to Magnolia Oil Company March 14, 1945. Petitioner, from the beginning, did not intend to retain this lease. (b) A lease purchased August 5, 1944, for $70 and sold to Superior Oil Company May 19, 1945, for $200. (c) A lease purchased December 10, 1941, for $40 and sold to Carter Oil Company May 3, 1945, for $500 with an obligation on the part of the purchaser to drill and retention by the petitioner of an interest in the well. During the taxable year petitioner incurred deductible business expenses in the operation of his automobile in the Jackson area and in payment for notary public services in the amount of $500. Deductible business expense was incurred in traveling to Shreveport in the amount of $200; to other cities away from the Jackson area, not including Shreveport, in the amount of $219.50. Telephone calls in the amount of $150 are deductible as a business expense. During the taxable year petitioner was engaged in the business of purchasing oil leases for sale. Those leases bought or sold by the petitioner in the taxable year constitute leases *33 held by him primarily for sale to customers in the ordinary course of his business except the lease sold to Carter Oil Company, which was held for investment. Opinion One of the issues for determination is whether a deduction is allowable for amounts expended for meals, lodging, automobile expenses, telephone and notary public services within the provisions of section 23 (a) (1) (A) [1] of the Internal Revenue Code, or whether those expenditures are nondeductible as personal or living expenses under section 24 (a) (1) [2] of the Code. *34 We think the amounts paid for meals and lodging in Jackson, Mississippi, nondeductible. The facts are clear that over a period of years petitioner's main source of income has been in the Mississippi oil area, of which Jackson is the center. His business contacts were there, the essential source of his income - oil property - was there and his principal business transactions were engaged in there. The maintenance of a home in Shreveport, Louisiana, added nothing to the production of income in so far as his business activity was concerned. His principal place of business was Jackson and the fact that he chose to maintain a home other than at his principal place of business for his own convenience does not make deductible sums paid for personal or living expenses. Commissioner v. Flowers, 326 U.S. 465; Barnhill v. Commissioner, 148 Fed. (2d) 913. Included in the deduction taken by petitioner is an amount computed from the checks in evidence described as being for "travel expenses." These expenses, it was testified, arose from the operation of petitioner's automobile in his business, and notary public services within the Jackson area. It can not be doubted *35 that in petitioner's business the operation of his automobile is essential in traveling to the various areas where desirable property is located and in contacting the owners to obtain leases on the property. Although petitioner has not specified what amounts are allocable to the operation of his automobile and to notary public services, we find upon the evidence and the authority of Cohan v. Commissioner, 39 Fed. (2d) 540, the amount of $500 as an allowable deduction for the above expenses. Upon the same reasons and by computation from the hotel bills we find the amount of $150 as an allowable deduction for telephone expense. Respondent does not question a deduction in the amount of $65 for travel expenses to east Texas. In addition, petitioner is claiming a deduction of $219.50 for travel expenses to cities away from the Jackson area. We do not believe this excessive. Petitioner has included in his deduction for traveling expenses his trips between Jackson and Shreveport. Although Shreveport is petitioner's home, he did enter into two lease transactions in Louisiana in 1945 and did have a business purpose, on occasion, in going to Shreveport from his principal place *36 of business in Jackson to consult with his associate Charles G. Laskey concerning their joint ventures. Personal considerations were undoubtedly the underlying purpose of most of these trips. Upon a showing that travel to Shreveport was for a business purpose, we believe expenses incurred on those occasions should be treated no differently than travel to other cities away from his principal place of business, although it was his home. No division is made by petitioner in the expenses as to those which were personal and those which were for his business. However, by apportionment we find $200 to be legitimate traveling expense and deductible as such. Upon the evidence before us petitioner is allowed a deduction in the total amount of $1,069.50. The next issue for our determination is whether income from the sale of the leases in question is ordinary income or capital gains. Section 117 (a) (1) [3] of the Internal Revenue Code excludes from the definition of capital assets property held primarily for sale to customers in the ordinary course of his trade or business. Petitioner is a "wildcat" oil operator, working with limited capital in purchasing oil leases *37 on property he anticipates will produce. It is no doubt true that production of oil is the underlying object in acquiring leases, but it is also true that the expectation of oil production lends value to the leases which is realized upon their sale. Whether to produce oil was the primary object in acquiring the leases or to reap a profit from the sale of the leases is dependent upon the facts. Over the past 6 years petitioner has received income from only one area of production. The amount of income received is small compared with income received from the purchase and sale of leases. In 1945 income from production amounted to $260.01. Income from the sale of leases was $26,037.54. In 1945 petitioner purchased 15 or 20 leases for his own account in addition to purchases made for oil companies on a commission basis. In the same year he sold 27 leases, none of which were producing at the time. These leases had been held for periods ranging from one day to 3 1/2 years. Only three had been held for longer than six months. His only production venture in 1945 was in Madison County, Mississippi, where a "farm out" operation was begun, but prior to completion of the well, petitioner sold his *38 interest, retaining a one-eighth royalty interest. Petitioner conducted his lease purchase and sale transactions directly with the parties, not through a broker. Petitioner's sales were not occasional nor isolated but were frequent and continuous. Snell v. Commissioner, 97 Fed. (2d) 891. The pattern of petitioner's business as deduced from the evidence before us can only be that he was engaged in the purchase of leases for sale. That petitioner received a relatively small income from one area of production and had been engaged in infrequent production ventures does demonstrate that he was not engaged in the business of selling leases. Snell v. Commissioner, supra.Even if it were the fact, and we have not been shown that it is, that the selling operations were not the principal business, it can not be disputed that these operations were an ordinary feature of petitioner's business. We accordingly hold that the profits from such sales constitute ordinary income with the single exception noted below. *39 Although we have concluded that petitioner's principal business was the purchase and sale of leases, we believe that in specific instances, leases could have been acquired for investment purposes and constitute a capital asset. See Nelson A. Farry, 13 T.C. 8. Of the leases questioned by respondent the only specific lease we have reference to is the one purchased December 10, 1941, for $40 and sold to Carter Oil Company on May 10, 1945, for $500. The facts surrounding the holding and sale of this lease are sufficient to remove it from the category of property held for sale. It was held for over 3 1/2 years, delayed rental has been paid on it for this period and it was sold with an obligation upon the purchaser to drill and to carry petitioner for an interest in the well. The profit from this sale is considered long-term capital gain. Decisions will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *. ↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (1) Personal, living, or family expenses, * * *.↩
3. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1)↩. * * *